# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|                          |   |                              |
|--------------------------|---|------------------------------|
| JESUS VILLEGAS,          | § |                              |
| Petitioner,              | § |                              |
| VS.                      | § | CIVIL ACTION NO. H-06-0018   |
|                          | § |                              |
| NATHANIEL QUARTERMAN,    | § |                              |
| Respondent.              | § |                              |

## MEMORANDUM AND OPINION

Petitioner, Jesus Villegas, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging the calculation of his sentence following his parole revocation in 2004. Respondent filed a motion for summary judgment, (Docket Entry No. 7), and copies of the state court record. Villegas has not responded. The court will construe Villegas's pleadings on file, including his memorandum in support of his federal petition and his state application, as his response. After consideration of the motion, the record, and applicable authorities, the court grants respondent's motion. The reasons for this ruling are stated below.

## I.    Background

Villegas pled guilty to the felony offense of possession of a controlled substance in the 174th Judicial District Court of Harris County, Texas. (Cause Number 583981-A). On December 19, 1990, the court sentenced Villegas to twenty years imprisonment. The Texas Board of Pardons and Paroles ("Board") released Villegas to parole on December 22, 1992. *Ex parte Villegas,* Application No. 63,171-01 at 69-70.

A pre-revocation warrant was issued against Villegas on October 13, 1993, and was executed against Villegas on October 21, 1993.  The Board voted on January 18, 1994, to transfer Villegas to an intermediate sanctions facility.  The pre-revocation warrant was withdrawn on February 1, 1994.

A second pre-revocation warrant was issued against Villegas on December 6, 1994, and was executed against Villegas on November 26, 1999.  The pre-revocation warrant was republished on December 3, 1999, and was executed against Villegas on April 24, 2000.  The Board voted on May 23, 2000, to transfer Villegas to an intermediate sanctions facility.  The pre-revocation warrant was withdrawn on August 16, 2000.

A third pre-revocation warrant was issued against Villegas on October 22, 2002, and was executed against Villegas on March 1, 2003.  The Board voted on March 12, 2003, to transfer Villegas to an intermediate sanctions facility.  The pre-revocation warrant was withdrawn on July 3, 2003.

A fourth pre-revocation warrant was issued against Villegas on August 26, 2003, and was executed against Villegas on September 1, 2003.  The Board voted on September 11, 2003, to transfer Villegas to an intermediate sanctions facility.  The pre-revocation warrant was withdrawn on November 13, 2003.

A fifth pre-revocation warrant was issued against Villegas on January 22, 2004, and was executed against Villegas on May 28, 2004.

In Cause Number 0989355, Villegas was arrested for possession of a controlled substance on May 28, 2004, and the 208th Judicial District Court of Harris County, Texas

2

sentenced Villegas to a term of 180 days in state jail. *Ex parte Villegas*, Application No. 63,171-01 at 72, 74.

On June 2, 2004, a parole official interviewed Villegas  and notified him of the following alleged violations of the conditions of his parole:

(1)     Rule #1 Failure to Report - on January 8, 2004 Villegas failed to report to his parole officer;

(2)     Rule #2 Possession of Controlled Substance - Villegas was convicted of possession of a controlled substance in Cause Number 0989355 on June 1, 2004; and

(3)     Rule #9B Failure to Pay Supervision Fees - Villegas failed to pay supervision fees since June 12, 2002.

*Ex parte Villegas*, Application No. 63,171-01 at 74.

A parole representative informed Villegas of his rights in the revocation process, and asked if he wanted a hearing.  Villegas signed and acknowledged a full understanding of these allegations, and his rights in the revocation process. *Ex parte Villegas*, Application No. 63,171-01 at 73.  Villegas waived his rights to a revocation hearing. (Docket Entry No. 7, Respondent's Motion for Summary Judgment, Ex. A, p. 4).  Villegas admitted to violating Rules 1, 2, and 9B. *Ex parte Villegas*, Application No. 63,171-01 at 72.  On June 17, 2004, the Parole Board Panel voted to revoke Villegas's parole. *Ex parte Villegas*, Application No. 63,171-01 at 58, 72.  Villegas is scheduled to discharge his sentence on July 16, 2021. *Ex parte Villegas,* Application No. 63,171-01 at 80.

Villegas filed an application for state habeas corpus relief on June 2, 2005, in which he challenged the calculation of his sentence following the revocation of his parole. The Texas Court of Criminal Appeals denied it without written order, on findings of the trial court, without a hearing on December 1, 2005. *Ex parte Villegas,* Application No. 63,171-01 at cover.

On January 4, 2006, this court received Villegas's federal petition. Villegas contends that his sentence is void for the following reasons:[1]

(1)     The Board denied him credit for time served on parole following the revocation of his parole.

(2)     The Board forfeited his previously earned good time credits.

(3)     The Board violated the Double Jeopardy Clause by denying him credit for time served on parole and subjecting him to multiple punishments.

(4)     The Board is violating the prohibition against ex post facto laws by changing the rules and regulations with respect to parole.

(5)     He was deprived of credit for calendar time served on parole, in violation of the prohibition against bills of attainder.

(6)     The Board violated his due process rights when they refused to provide him with appointed counsel for the revocation hearing.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8).

---

[1]     In the interest of clarity, the court has renumbered Villegas's claims.

4

Respondent moves for summary judgment on the ground that Villegas's sixth ground is procedurally barred and the remaining grounds lack merit.  The court considers the respondent's arguments and Villegas's constructive responses below.

## II.    The Applicable Legal Standards

Villegas's petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the  evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986).  Under the AEDPA, the prism of the substantive evidentiary burden differs depending upon whether the issue is one of law, fact, or both.  *See Drinkard,* 97 F.3d at 767-68.  The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Therefore, § 2254(e)(1) -- which mandates that findings of fact made by a state court are "presumed to be correct" -- overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, they must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Villegas is a *pro se* petitioner. In this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court accords Villegas's state and federal habeas petitions a broad interpretation. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.    Analysis

### A.    The Claim Based on the Denial of Credit for Time Served on Parole

Villegas argues that he was unlawfully denied credit for the time that he spent on parole.  Villegas's claim that he should be given credit for the time he was on parole before revocation is without merit.  *Morrison v. Johnson*, 106 F.3d 127, 129 n.1 (5th Cir. 1997).  When parole, mandatory supervision, or conditional pardon is revoked, the defendant may be required to serve the portion remaining of the sentence on which he was released.  That portion is to be calculated without any credit for the time from release to revocation.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.18 § 14(a) (West 1997); *Cortinas v. United States Parole Comm'n,* 938 F.2d 43, 46 (5th Cir. 1991) (rejecting a challenge to a similar federal statute).

Villegas argues that he is being denied time credit for street time served due to an offense that is mandatory supervision eligible, in violation of § 508.283(c) of the Texas Government Code.  Prior to September 2001, Texas law allowed the Board of Pardons and Paroles to disregard the street time a prisoner accumulated while on release. TEX. GOV'T CODE ANN. § 508.283 (Vernon 1998).  Prisoners had no liberty interest in retention of street time upon revocation of their parole. *See Thompson v. Cockrell*, 263 F.3d 423, 426 (5th Cir. 2001).  The 77th Legislature passed House Bill 1649, now codified at Texas Government Code § 508.283(c), which grants certain offenders, who have their parole or mandatory supervision revoked on or after September 1, 2001, credit for the portion of time they spent on parole or mandatory supervision, *i.e.,* street time credit.  The Fifth Circuit has held that this amendment may have created a protected liberty interest in retention of street time by

some prisoners, like Villegas, whose release was revoked after September 1, 2001. *See*

*Whitley v. Dretke*, No. 04-20392, 2004 WL 1895117 (5th Cir. 2004).

Section 508.283 provides, in relevant part:

> (b) If the parole, mandatory supervision, or conditional pardon of a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation.
>
> (c) If the parole, mandatory supervision or conditional pardon of a person other than a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. For a person who on the date of issuance of a warrant or summons initiating the revocation process is subject to a sentence the remaining portion of which is greater than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for the time from the date of the person's release to the date of revocation. For a person who on the date of issuance of the warrant of summons is subject to a sentence the remaining portion of which is less than the amount of time from the date of the persons release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for an amount of time equal to the remaining portion of the sentence on the date of issuance of the warrant or citation.

TEX. GOV'T CODE ANN. § 508.283(b), (c) (Vernon Supp. 2004) (emphasis added).

Section 508.149(a), entitled "Inmates Ineligible for Mandatory Supervision," provides,

in relevant part:

> (a) An inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of:
>
>  . . .

9

> (7) a first degree felony or a second degree felony under Section
> 22.02, Penal Code;

*Id.* § 508.149(a)(7).

Section 508.283 applies to Villegas's case given that his parole revocation occurred after September 1, 2001.  The record shows that Villegas was previously convicted of a first-degree felony of aggravated  assault under § 22.02 of the Texas Penal Code.  *Ex parte Villegas*, Application No. 63,171-01 at 87.  The court learned through telephone inquiry to the TDCJ that Villegas was convicted of aggravated assault on February 25, 1980 and the 263rd Judicial District Court of Harris County, Texas sentenced Villegas to a prison term of five years.  (Cause Number 310871).  Villegas is "a person described by Section 508.149(a)," and, thus, he is not entitled to credit for the time he spent on parole under § 508.283(b).

The parole certificate admonished in bold, capitalized type: "Be it further known that any violation of such rules or conditions shall be sufficient cause for revocation of this parole, and that all time served on parole shall be forfeited."  *Ex parte Villegas*, Application No. 63,171-01 at 69.  Villegas signed this document on December 22, 1992.  At the time he was released to parole in December 1992, Villegas should reasonably have been aware of the consequences of violating the conditions of his parole.

The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).

Villegas is not entitled to federal habeas corpus relief on this claim.

**B.     The Claim Based on the Forfeiture of Previously Earned Good Time Credits**

10

Villegas complains that the TDCJ-CID improperly refused to restore good time credits he had earned while incarcerated, before his parole and its revocation.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 7).   The TDCJ-CID grants good conduct time to an inmate only if the department finds that the inmate is actively engaged in an agricultural, vocational, or educational endeavor, in an industrial program or other work program, or in a treatment program.  TEX. GOV'T CODE ANN. § 498.003(a) (West 2000).  An inmate may accrue good conduct time, in an amount determined by the department that does not exceed 15 days for each 30 days actually served, for diligent participation in an industrial program or other work program or for participation in an agricultural, educational, or vocational program provided to inmates by the department.  TEX. GOV'T CODE ANN. § 498.003(d).

The Constitution does not guarantee an inmate good time credit for satisfactory behavior while in prison.  *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997) (citing *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974)).  The award of good conduct time is a matter of state law, not a federal constitutional right.  *See Holtzinger v. Estelle,* 488 F.2d 517, 518 (5th Cir. 1974).  If a state creates a right to good time credit that gives rise to a liberty interest, then a prisoner is entitled to Fourteenth Amendment procedural due process in relation to the loss of such credit.  *See Madison,* 104 F.3d at 768 (citing *Wolff,* 418 U.S. at 557).  Under Texas law, however, "good-time credit is not a vested right, but rather is a privilege which may be forfeited, either by violating the TDCJ's rules while in its custody, or by violating the guidelines of a conditional release program."  *Ex parte Henderson,* 645 S.W.2d 469, 472 (Tex. Crim. App. 1983).

11

When Villegas committed the underlying offense, Texas law provided, as it does today, that good conduct time credit applies only to eligibility for parole or mandatory supervision and does not otherwise affect an inmate's term.  TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1977); *see* TEX. GOV'T CODE ANN. § 498.003(a) (West 1992).  Texas law provided, as it does today, that "good conduct time is a privilege and not a right."  TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1985); *see* TEX. GOV'T CODE ANN. § 498.003(a) (West 1992).  The statute stated:

> Upon revocation of parole or mandatory supervision of an inmate, the inmate loses all good conduct time previously accrued, but upon return to the department the inmate may accrue new good conduct time for subsequent time served in the department.  The director may, however, restore good conduct time forfeited upon revocations not involving new criminal convictions after an inmate has served a reasonable period of good behavior in the department, to be no less than three months, subject to rules adopted by the department.

TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1985).

In 1987, the Texas legislature added a provision that allowed the Texas Board of Criminal Justice to adjust its policy on restoration of good time credits in relation to prison overcrowding.  If the Board of Criminal Justice determined that overcrowding had decreased and it was not necessary to restore good conduct time or award additional good conduct time, it could direct the department to discontinue those practices.  TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1988); *see Hallmark v. Johnson,* 118 F.3d 1073, 1075 (5th Cir.), *cert. denied,* 522 U.S. 1003 (1997).

12

In 1995, the Texas legislature amended the statute regarding the reinstatement of previously earned good time credits.  On a return to the incarceration, an inmate could accrue new good conduct time, but the TDCJ could no longer restore previously earned good conduct time forfeited on a revocation.  *See* TEX. GOV'T CODE ANN. § 498.004(b) (West 1999).  Since as early as 1985, Texas law provided the Board of Criminal Justice discretion to forfeit previously earned good time credits for violations of parole.  The Board has also had the discretion to restore previously forfeited, good conduct time credits.  In *Hallmark,* the Fifth Circuit observed that because the Texas statutes have, since at least 1977, given the state correctional authorities discretion to restore forfeited good time credits, there is no protected liberty interest in the restoration of good time credits.  *Hallmark,* 118 F.3d at 1079-80 (citing *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 11 (1979)).  The failure to restore Villegas's previously forfeited good time credits violates neither Texas law nor the Due Process Clause of the United States Constitution.

The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).

Villegas is not entitled to federal habeas corpus relief on this claim.

**C.      The Claim Based on Violation of the Ex Post Facto Clause**

Villegas claims a violation under the Ex Post Facto Clause of the Constitution.  To constitute a violation of the Ex Post Facto Clause, a change in law "must be both retroactive and to a prisoner's detriment." *See Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997); *see also, Lynce v. Mathis*, 519 U.S. 433, 441 (1997) ("To fall within the ex post facto

13

prohibition, a law must be retrospective -- that is, 'it must apply to events occurring before its enactment'--and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."). The courts "must decide if the change disadvantaged the prisoners affected by it to a degree of ex post facto significance." *Hallmark*, 118 F.3d at 1078. In other words, the courts "must determine whether [the change] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509 (1995).

The implementation of TEX. CODE CRIM. PROC. art. 508.283, has not caused Villegas to be prosecuted twice for the same offense or to endure "a punishment more severe than that assigned by law when the criminal act occurred. . . ." *Hallmark*, 118 F.3d at 1077 (citing *Weaver v. Graham*, 450 U.S. 24, 30 (1981)). Villegas alleges the state has added street-time to his sentence. Texas law has provided, at least since 1983, that a person is not entitled to credit for "street time" or "flat time" following revocation of parole or mandatory supervision. Acts 1983, 68th Leg., p. 978, ch. 232, § 5.

Villegas is challenging the calculation of his twenty-year sentence in Cause Number 583981, which was initially imposed in 1990. The denial of credit for time on parole did not increase Villegas's punishment for the offense of possession of a controlled substance beyond what was prescribed when the crime was committed. Villegas still must serve the same twenty-year sentence imposed by the trial court and permitted by Texas law at the time of the offense. Villegas cannot demonstrate an ex post facto violation.

14

**D.     The Claim Based on Violation of the Double Jeopardy Clause**

Villegas argues that the application of Texas Government Code § 508.283(c) has caused him to serve his sentence in installments.  He argues the time on parole was punitive.  By denying him credit for time served on parole, he claims that he is being subjected to multiple punishments for the same offense.  *Ex parte Villegas*, Application No. 63,171-01 at 18.

Texas law has long provided that the time spent on parole or mandatory supervision which is subsequently revoked is not counted toward the sentence. *Starnes v. Connett,* 464 F.2d 524, 524 (5th Cir. 1972); *Betts v. Beto,* 424 F.2d 1299, 1300 (5th Cir. 1970).  The Fifth Circuit has upheld this very provision in Texas law. *Newby v. Johnson,* 81 F.3d 567, 569 (5th Cir. 1996); *Morrison v. Johnson,* 106 F.3d 127, 129 and n.1 (5th Cir. 1997) (requiring an inmate to serve the entire portion remaining on his sentence after parole is revoked does not violate the Double Jeopardy Clause).

Villegas argues that requiring him to serve the entire portion remaining on his sentence after his parole was revoked violates the multiple punishments prong of the Double Jeopardy Clause.  This argument is also without merit. *Cortinas,* 938 F.2d 43, 46-47 (declining to extend double jeopardy protections to parole revocation proceedings).

Although Villegas argues that sentences cannot be served in installments, that rule is not applicable because the interruption of the sentence was caused by his own fault, as shown by the revocation.  While Villegas is "in custody" so long as he is on parole, he does not get credit for all of the time spent on parole if this status is revoked.

15

In *Free v. Miles,* 333 F.3d 550 (5th Cir. 2003), the Fifth Circuit observed that there was some precedent supporting the rule that a sentence may be interrupted and re-started only if the interruption is the fault of the prisoner.  In such cases, the period of interruption is not credited against the sentence as time served.[2]

Although the common-law rule against serving sentences in installments prohibits the postponement, via temporary release of the prisoner, of the date that the prisoner can expect to be free from the sentence, that rule does not apply because it was not Villegas's release on parole which postponed the date that he could be expected to be free from the sentence. Instead, the revocation of Villegas's parole caused him to be deprived of credit for the time that he spent on parole, in accordance with Texas law. *Moultrie,* 464 F.2d at 553; *White v. Pearlman,* 42 F.2d 788, 789 (10th Cir. 1930) (noting that a sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner; the violation of the terms of parole is in effect an evasion of the terms of that custody).

---

[2]*See Zerbst v. Kidwell*, 304 U.S. 359, 58 S. Ct. 872, 82 L. Ed. 1399 (1938) (holding that paroled prisoners' commissions of other crimes interrupted original sentences); *Dunne v. Keohane*, 14 F.3d 335, 336 (7th Cir. 1994) (noting common law rule "that unless interrupted by fault of the prisoner ... a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it"); *In re Grand Jury Proceedings*, 541 F.2d 464 (5th Cir. 1976) (explaining that civil contempt confinement interrupts existing sentence for the term of the grand jury proceeding); *Lipscomb v. Clark*, 468 F.2d 1321 (5th Cir. 1972) (holding that issuance of "violator's warrant" interrupted another non-concurrent sentence); *Moultrie v. Georgia*, 464 F.2d 551 (5th Cir. 1972) (holding that violation of parole interrupts sentence).

Because Texas law provides for the forfeiture of time spent on parole or mandatory supervision which is subsequently revoked, and this prescription has been upheld by the Fifth Circuit, Villegas's argument to the contrary is without merit.

As further support for his claim, Villegas relies on the following rule restated in *Ex Parte Morris*, 626 S.W.2d 754, 757-58 (Tex. Crim. App. 1982), "A sentence must be continuous and a prisoner or inmate cannot be required to serve his sentence in installments, unless it is shown that a premature or unlawful release of the prisoner or inmate resulted or occurred through some fault on the part of the prisoner or inmate." *Ex parte Villegas*, Application No. 63,171-01 at 16. The law in Texas from the time of Villegas's offense to the present requires the State to credit Villegas for time after an erroneous release, so long as Villegas was not at fault. *See Morris*, 626 S.W.2d at 757.

Villegas is not entitled to relief on this ground. First, Villegas is making an argument under state law rather than federal constitutional law. Secondly, *Ex Parte Morris* involved an inmate who was *erroneously* released from prison. Since petitioner was not "erroneously released" in 2004, his case is distinguishable. Villegas's claim is without merit and should be denied.

Villegas is not entitled to habeas corpus relief on this claim.

### E.    The Bill of Attainder Claim

Villegas argues that the TDCJ-CID and the Board added a new sentence to his judicially-imposed sentence without judicial process. He argues that this was in violation of the constitutional prohibition against bills of attainder. U.S. CONST. art. 1, § 9, cl. 3. He

asserts that the Texas legislature enacted Texas Government Code § 508.283, which authorized the Board and TDCJ-CID to extend his sentence without a judicial trial. (Docket Entry No. 2, Petitioner's Memorandum, pp. 5-6).

The Supreme Court has explained that a bill of attainder is a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial. *Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 846-47, 104 S. Ct. 3348, 82 L. Ed.2d 632 (1984); *accord, Canfield Aviation Inc. v. National Transportation Safety Board,* 854 F.2d 745, 748 n.4 (5th Cir. 1988). There are three requirements for a bill of attainder: specification of the affected person or persons, punishment, and lack of a judicial trial. *Selective Service System,* 468 U.S. at 847.

To succeed on this claim, Villegas must show the Texas State Legislature sought to deprive him of his liberty without a judicial trial when it passed Texas Government Code § 508.283. Villegas has failed to show that he was the victim of a bill of attainder because he is not an identifiable individual under the Texas statute regarding sentence computation upon revocation of parole or mandatory supervision. Villegas cannot do this. The law is of neutral application. Villegas had the benefit of a revocation hearing prior to his punishment. This statute is not a bill of attainder.

The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States. Villegas's claim lacks merit. 28 U.S.C. § 2254(d)(1).

18

Villegas is not entitled to federal habeas corpus relief on this claim.

In a related claim, Villegas asserts that the Texas prison system has added time onto the sentence which he received from the court. This also is incorrect. The prison officials did not add time onto his sentence, but computed the time that he served in accordance with Texas law, which provides that Villegas cannot receive credit for the time spent on parole or mandatory supervision which is later revoked. Villegas still has a 20-year sentence; however, he must accumulate time credits in a lawful manner. This contention is without merit.

Villegas further argues that the denial of credit for time served on parole violates the separation of powers. Villegas asserts that his sentence should be based solely on the information in the sentencing court's judgment, not the whim of the legislature. *Ex parte Villegas*, Application No. 63,171-01 at 17-18.

The doctrine of separation of powers holds that "[T]he accumulation of all powers legislative, executive, and judiciary in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elected, may justly be pronounced the very definition of tyranny." James Madison, *The Federalist* (no. 47) (January 30, 1788). The Fifth Circuit has observed that the federal doctrine of separation of powers has never been incorporated and is not enforced against the states. *Attwell v. Nichols,* 608 F.2d 228, 230 (5th Cir. 1979), *cert. denied,* 446 U.S. 955 (1980). Even if the laws of the State of Texas violated the doctrine of separation of powers, this would be a matter only of state law, not federal law, not meriting federal habeas corpus relief.

19

Even were his separation of powers argument cognizable, Villegas has failed to show a violation of the doctrine.  The term of his sentence has not been altered; he is not entitled, under Texas law, for credit toward that sentence for the time which he spent on parole which was later revoked.  His claim on this point is without merit.

**F.      The Claim Based on Ineffective Assistance of Counsel**

Respondent argues that ground 6 is unexhausted and procedurally barred because Villegas did not raise it in his state application for a writ of habeas corpus or in a petition for discretionary review.  (Docket Entry No. 7, Respondent's Motion for Summary Judgment, p. 7).

Prisoners suing under Section 2254 are required to exhaust their claims in state court before applying for federal collateral relief.  *See Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).  Full exhaustion of all claims presented is required before federal habeas corpus relief is available.  *Rose v. Lundy,* 455 U.S. 509, 518-22 (1982).  The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998)(citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982)).

Generally, a federal habeas corpus petition that contains both exhausted claims and unexhausted claims, *i.e.*, a mixed petition, should be dismissed to allow the petitioner to return to the state forum to present his unexhausted claim or claims.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  The total exhaustion rule of *Rose* and its progeny is no longer binding under the federal habeas corpus statutes.  The AEDPA amended 28 U.S.C. § 2254(b) to allow

20

a federal court to deny an application on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2)(West 1997).  Under this provision, a federal court in its discretion may review on the merits a habeas corpus application containing unexhausted claims.  In *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), the Fifth Circuit noted that amended § 2254(b)(2) is permissive ("[a]n application . . . may be denied ...").  Because this authority is discretionary only, a federal court is not required to exercise this new prerogative and may still defer to the state courts where state consideration of an unexhausted claim would be appropriate.

In his state application, Villegas raised the following grounds:

(1)     the denial of credit for time on parole violates the Eighth Amendment's prohibition against cruel and unusual punishment;

(2)     the extension of his sentence violates the terms of his plea bargain agreement;

(3)     Texas Government Code § 508.283 is a bill of attainder;

(4)     the Texas legislature has violated the separation of powers;

(5)     his sentence violates the Double Jeopardy Clause; and

(6)     he was denied credit for time served on parole.

*Ex parte Villegas*, Application No. 63,171-01 at 7-8, 14.

Villegas did not raise claim 6 in his state habeas petition.  Villegas is now foreclosed from bringing this claim in a successive habeas petition because of Texas's abuse of the writ doctrine.  *Ex parte Carr,* 511 S.W.2d 523, 525-26 (Tex. Crim. App. 1974).  A procedural rule that acts as a bar must be "firmly established and regularly followed." *Ford v. Georgia,* 498

U.S. 411, 423 (1991) (quoting *James v. Kentucky,* 466 U.S. 341, 348 (1984)).  Texas strictly

and regularly applied the abuse of the writ doctrine when Villegas filed his habeas petition.

*Emery v. Johnson,* 139 F.3d 191, 195, 201 (5th Cir. 1997); *see also Fearance v. Scott,* 56 F.3d

633, 642 (5th Cir. 1995).  Villegas would be precluded from asserting his unexhausted claim

in a successive habeas petition in Texas state court.

　　　　The court finds that claim 6 is procedurally barred.  Alternatively, the claim lacks

merit.

　　　　Villegas complains that the Board denied him counsel prior to denying him credit for

time on parole.  In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court declined to

adopt a bright-line rule requiring the appointment of counsel at revocation hearings.  The

court stated:

> We thus find no justification for a new inflexible constitutional
> rule with respect to the requirement of counsel.  We think,
> rather, that the decision as to the need for counsel must be made
> on a case-by-case basis in the exercise of a sound discretion by
> the state authority charged with responsibility for administering
> the probation and parole system. Although the presence and
> participation of counsel will probably be both undesirable and
> constitutionally unnecessary in most revocation hearings, there
> will remain certain cases in which fundamental fairness -- the
> touchstone of due process--will require that the State provide at
> its expense counsel for indigent probationers or parolees.

*Id.* at 790.

　　　　The *Gagnon* Court observed that the facts and circumstances in preliminary and final

hearings are susceptible of almost infinite variation, and a considerable discretion must be

allowed the responsible agency in making the decision.

22

The Court explained:

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.  In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.   In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

*Gagnon*, 411 U.S. at 790-91.

On June 2, 2004, Villegas was notified of the alleged parole violations.  *Ex parte Villegas*, Application No. 63,171-01 at 74.  Villegas was notified of his rights during the revocation process:

> 1. You have the right to be personally served with written notice of the rules and conditions you are accused of violating. That means you have the right to have someone give you written information of what conditions of release you are accused of breaking.
>
> 2. You have the right to have a preliminary hearing if you have not been convicted of a new offense. This hearing will be held at or near the place of the alleged parole or mandatory supervision violation. The purpose of the preliminary hearing is to determine whether there is probable cause or reasonable grounds to believe you violated a condition of release.
>
> 3. You have the right to have a revocation hearing if you are alleged to have committed technical violations or you are found

23

guilty in a criminal case. However if you receive a felony conviction with a term of incarceration in a penal institution, you will be allowed only a limited hearing in order to explain why you should not be revoked. You must request this mitigation hearing.

4. You have the right to a disclosure of evidence against you. That means you can see everything before the hearing.

5. You have the right to a state appointed attorney under certain circumstances to be determined by a hearing officer. If you qualify for that right, an attorney will be appointed to represent you. If you do not qualify for that right, you may hire an attorney to represent you.

6. You have the right to be heard in person by telling a hearing officer what happened and to present evidence, affidavits, letters and documents in support of your position.

7. You have the right to confront and cross-examine adverse witnesses by asking questions at the hearing unless the hearing officer specifically finds good cause for not allowing you to do so.

8. You are entitled to be heard on the violations by someone designated by the panel.

9. If your parole or mandatory supervision is revoked as a result of a hearing, you will receive a written report by the hearing officer which sets forth the evidence relied upon in support of a finding that you violated one or more conditions of your parole or mandatory supervision.

10. If revoked as a result of a hearing, you may have the right to request that the Board of Pardons and Paroles reopen the revocation hearing within sixty (60) days from the date of the Board's decision.

*Ex parte Villegas*, Application No. 63,171-01 at 73.

24

Villegas signed this document acknowledging his understanding of his rights. Villegas admitted to violating three conditions of his parole. *Ex parte Villegas*, Application No. 63,171-01 at 74. Villegas does not allege that he ever requested counsel. Even if he had, the record shows that he was charged with technical violations of his parole. Villegas waived his right to a revocation hearing, and he admitted to the violations. Any request for counsel would likely have been denied because Villegas did not qualify to have a state-appointed attorney.

The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States. The relief Villegas seeks is denied. 28 U.S.C. § 2254(d)(1).

## IV.    Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 7), is GRANTED. Villegas's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th

25

Cir. 2000).  Specifically, where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack,* 529 U.S. 484.

This court denies Villegas's petition after careful consideration of the merits of his constitutional claims.  This court denies a COA because Villegas has not made the necessary showing for issuance.  Accordingly, a certificate of appealability is DENIED.


SIGNED on March 12, 2007, at Houston, Texas.


Lee H. Rosenthal
United States District Judge